IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEITH JONES,                          )
                                      )
                Plaintiff,            )
                                      )
v.                                    )          Case No. 06-2143-JPO
                                      )
UNITED PARCEL SERVICE, INC.,          )
                                      )
                Defendant.            )

## ORDER

The jury trial of this diversity case begins tomorrow, August 19, 2008.  Highly summarized, the plaintiff, Keith Jones, claims that the defendant, United Parcel Service, Inc., terminated his employment in retaliation for filing a worker's compensation claim, in violation of Kansas public policy as established by common law.

On August 12, 2008, during a limine and status conference, upon inquiry by the undersigned U.S. Magistrate Judge, James P. O'Hara, defendant requested a bifurcated trial with regard to punitive damages.  That is, evidently it is now defendant's position that, should the jury find in plaintiff's favor on liability, and also make the requisite finding that defendant's conduct was willful, wanton, or malicious so as to allow the imposition of punitive damages, then the applicable Kansas statute (K.S.A. § 60-3702) requires the court, not the jury, to determine post-verdict the *amount* of punitive damages **(doc. 115)**.  Because this issue cropped up just one week before trial, the court ordered expedited briefing (*see*

doc. 116).  Plaintiff has filed a response to defendant's motion (doc. 118), and defendant has filed a reply brief (doc. 120).  As explained below, defendant's motion is respectfully denied.

There is no dispute that, in a diversity case like this one, the *Erie* doctrine calls for the court to apply Kansas substantive law and federal procedural law.[1]  Unfortunately, however, classification of a law as "substantive" or "procedural" for *Erie* purposes sometimes is a bit vexing.[2]  The general rule in diversity cases is that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in State court."[3]  But the "outcome determination" test has been further qualified in later cases, i.e., it must not be applied mechanically to sweep in all matters, and instead application of the test must be guided by the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."[4]  Ultimately, the basic test of whether a state statute or common law rule is substantive or procedural for *Erie* purposes is whether application of the state rule would make so much of a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum state, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure

---

[1] *See Ayres v. AG Processing Inc.*, No. 04-2060, 2005 WL 1799261, at *3 (D. Kan. July 22, 2005) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

[2] *Gasperini*, 518 U.S. at 427.

[3] *Id.* (quoting *Guar. Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

[4] *Id.* (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

to enforce the state rule would likely cause a plaintiff to choose the federal court over state court.[5]

As earlier indicated, the parties agree the jury must decide the threshold issue of whether defendant is liable on plaintiff's retaliatory discharge claim, and also whether defendant's conduct was willful, wanton, or malicious, such as would permit an award of punitive damages under Kansas law.  K.S.A. § 60-3702(b) lists several evidentiary factors that must be considered in determining the appropriate amount of punitive damages, and K.S.A. § 60-3702(e) provides various "caps" on the amount of punitive damages that may be included in a court's final judgment.  There is no dispute by the parties in this case that K.S.A. § 60-3702(b) & (e) both are substantive and therefore binding in this diversity action.

The problem in this case lies with K.S.A. § 60-3702(a), which provides:

> In any civil action in which exemplary or punitive damages are recoverable, the trier of fact shall determine, concurrent with all other issues presented, whether such damages shall be allowed. If such damages are allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded.

Although the joint proposed verdict form filed back on February 15, 2008 seemed to imply agreement by the parties that the jury would determine the amount of any punitive damages (*see* doc. 82, at 23), the parties now disagree whether the court or the jury should determine the amount of punitive damages.

---

[5] *Id.* at 428 (quoting *Hanna*, 380 U.S. at 468 n.9).

The issue of whether § 3702(a) requires a federal judge, sitting in a diversity case, to determine the amount of punitive damages, or whether a jury should decide the amount, is far from settled.[6]  The Supreme Court has not had occasion to address this issue.  Somewhat surprisingly, the Tenth Circuit Court of Appeals has not yet provided any definitive guidance.[7]

Defendant argues the provision of § 3702(a) directing the court to determine the amount of punitive damages to be awarded is substantive and therefore controlling in this diversity case.  Defendant correctly observes that *some* judges in the District of Kansas have found § 3702(a) to be substantive and thus those judges have not permitted juries to decide

---

[6]*Baker v. Equifax Credit Info. Servs.*, No. 97-2214, 1998 WL 101829, at *2 n.1 (D. Kan. Feb. 6, 1998).  In *Baker*, Judge Vratil, to whom the case at bar was assigned before the parties recently consented to have the undersigned magistrate judge try the case, did not resolve the issue.  Instead, she simply proposed to let the jury determine the amount of punitive damages and then, through an appropriate post-trial motion, decide whether to enter judgment on the jury's verdict, to construe the verdict as advisory, or to independently determine the amount of punitive damages.  *Id.*

[7]*See Ramirez v. IBP, Inc.*, No. 97-3111, 1998 WL 257161, at *1 n.1 (10th Cir. May 21, 1998) (stating that the trial judge, sitting alone "as provided by" § 3702, held an evidentiary hearing and entered the punitive damage award); *Scheufler v. Gen. Host Corp.*, 126 F.3d 1261, 1272 (10th Cir. 1997) (noting the district court determined the amount of punitive damages "pursuant to strict statutory guidelines"); *Ensminger v. Terminix Int'l Co.*, 102 F.3d 1571, 1576 (10th Cir. 1996) (noting the district court followed "the state procedure" in § 3701(a) by determining the amount of punitive damages).  Beyond these three cases, though, it is significant that the Tenth Circuit apparently has never directly held that a trial judge *must* decide the amount of punitive damages in a case controlled by Kansas law.  And it is equally significant that the Tenth Circuit has never reversed a judge who let a jury decide the amount of punitive damages in a diversity case controlled by Kansas law.

the amount of punitive damages.[8]   Unfortunately, none of the reported cases taking this

approach contain *any* analysis or discussion to explain their ultimate holding that the two-

step procedure outlined in § 3702(a) is substantive instead of procedural.   Therefore, the

undersigned magistrate judge respectfully submits that these decisions are not very

persuasive.

Plaintiff argues that there are *other* judges of this court who have held § 3702(a)'s

requirement that the court determine the amount of punitive damages is simply a state

procedure and therefore is not controlling in a diversity case such as this one.   Further,

plaintiff argues that he has a Seventh Amendment right to have a jury determine the amount

of punitive damages.   The undersigned notes that at least two judges in the District of Kansas

---

[8]*See, e.g.*, *Beck v. Atl. Contracting Co.*, No. 93-2480, 1994 WL 608598, at *1 (D. Kan. Oct. 14, 1994) (Lungstrum, J.) (decided in context of default judgment, and thus without any analysis of the substantive vs. procedural distinction); *Ruiz v. Quiktrip Corp.*, 826 F. Supp. 1284, 1285 n.1 (D. Kan. 1993) (O'Connor, J.) (no elaboration on court's finding in footnote that § 3702(a) was substantive); *cf. Whittenburg v. L.J. Holding Co.*, 830 F. Supp. 557, 565 n.9 (D. Kan. 1993) (Saffels, J.) (noting that § 3702 is substantive but not specifically addressing the provision directing the court to determine the amount of punitive damages).

The undersigned has been unable to find an opinion by Judge Vratil that directly decides the pending issue.   Counsel indicated during the recent limine and status conference that, when this case was scheduled for trial before Judge Vratil, she told them the jury would decide the amount of any punitive damages to be awarded, which would explain the above-described jointly submitted form of verdict.   Counsel were not clear whether Judge Vratil actually had mentioned using the middle ground approach of *Baker*, where she had proposed (but not ruled) that the jury would determine the amount of punitive damages and then, through an appropriate post-trial motion, the court would decide whether to enter judgment on the jury's verdict, to construe the verdict as advisory, or to independently determine the amount of punitive damages.   *See supra* note 6.

have held, after engaging in a thorough analysis, that despite the two-step procedure in K.S.A. § 3702(a), a litigant is entitled under the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38 to have a jury (not the court) determine the amount of punitive damages.[9] Notably, none of the judges in the District of Kansas who regard the two-step procedure under K.S.A. § 3702(a) as substantive have addressed the potential Seventh Amendment impediment to their approach.

With trial literally about to begin, the undersigned judge does not have the luxury of preparing an exhaustive opinion on this interesting issue. In any event, with all due respect for and deference to those wise judges in this district who subscribe to a different view, the undersigned judge, having reviewed all the foregoing authorities, concludes that the better reasoned approach is to treat § 3702(a)'s provision directing the court to determine the amount of any punitive damages to be awarded as merely reflective of state procedure and therefore not binding in a diversity action. In this regard, for purposes of the requisite *Erie* analysis, the undersigned firmly believes that declining to apply the state statute would *not* make so much of a difference to the character or result of the litigation that it would unfairly discriminate against Kansas citizens. Further, the undersigned is wholly unpersuaded that

---

[9]*See, e.g.*, *Vance v. Midwest Coast Transp., Inc.*, 314 F. Supp. 2d 1089, 1093 (D. Kan. 2004) (Brown, J.); *Oleson v. Kmart Corp.*, 185 F.R.D. 631, 637 (D. Kan. 1999) (Crow, J.) (retaliatory discharge case); *cf. Scheufler v. Gen. Host Corp.*, 895 F. Supp. 1411, 1414-15 (D. Kan. 1995) (Theis, J.) (in a complex case, granting a motion to bifurcate a jury trial into an actual damages phase and a separate punitive damages phase, and noting that § 3702's requirement that punitive damages liability be determined in the same trial phase as liability is "clearly procedural").

declining to apply the bifurcated procedure in the state statute would have so important an effect upon the fortunes of one or both of the litigants in this case that it would likely cause future plaintiffs to choose the federal court over state court.  Very simply, although it fair to say that many believe that juries are far more likely than judges to go overboard and render "big" punitive damage awards, and although that hypothesis is not without appeal, *nothing* has been placed before this court to advance let alone support that hypothesis.  Indeed, depending on the background of the judge and further depending on the jury pool for a given case in federal court in Kansas, it is at least possible that some judges might be inclined to punish a defendant more than some juries.  Substantial punitive damage awards by judges in this district who use the two-step procedure in K.S.A. § 60-3702(a) are by no means unprecedented.[10]

Therefore, should the jury in this case determine defendant retaliated against plaintiff, and that defendant acted in a willful, wanton, or malicious manner toward plaintiff, the jury will be permitted to determine the amount of any punitive damages to be awarded.  Of course, though, as contemplated by K.S.A. § 60-3702(e) and Fed. R. Civ. P. 50 and 59, the undersigned judge will retain discretion to scrutinize any punitive damage verdict that might be returned by the jury.  Accordingly, defendant's motion to bifurcate punitive damages **(doc. 115)** is respectfully denied.

---

[10] *See, e.g.*, *Burton v. R.J. Reynolds Tobacco Co.*, 205 F. Supp. 2d 1253, 1265 (D. Kan. 2002) (Lungstrum, J.), *rev'd*, 397 F.3d 906, 914 (10th Cir. 2005).

IT IS SO ORDERED.

Dated this 18th day of August, 2008, at Kansas City, Kansas.

           s/James P. O'Hara        
           James P. O'Hara
           U.S. Magistrate Judge